IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

**MOBILIZATION FUNDING, L.L.C.,**

 **Plaintiff,**

v.                 **CIVIL ACTION NO. 4:18-CV-72**

**W.M. JORDAN COMPANY, INC.,**

 **Defendant.**

## *MEMORANDUM OPINION AND ORDER*

Before the Court is W.M. Jordan's ("Jordan") Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1), (6), and (7). ECF Nos. 22–23. For the reasons set forth below, Jordan's Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART.**

### I.   FACTUAL AND PROCEDURAL HISTORY

The following facts are taken from Mobilization's Complaint and are taken to be true and cast in the light most favorable to Mobilization. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

Jordan entered into a General Contract with Riverside Retirement Services ("Riverside") to build the Apartments at Patriots Colony in Williamsburg, Virginia. ECF No. 1 at ¶ 5; *see* ECF No. 1-1. On December 12, 2016, Jordan entered into a Subcontract Agreement with Mexarg Contractors, LLC ("Mexarg"). ECF No. 1 at ¶¶ 11–12; *see* ECF No. 1-2. Jordan had a project manager, Jerry Barthelemy ("Barthelemy") who approved payments to its subcontractors. ECF No. 1 at ¶¶ 9–10. On January 10, 2018, Mexarg's own subcontractor complained that Mexarg had not paid them. *Id.* at ¶ 14. On January 20, 2018, Mexarg submitted a payment application

1

(Payment Application No. 6) to Jordan, which Barthelemy did not notify Mexarg that he had approved it. *Id.* at ¶¶ 17–18.

On January 30, 2018, Mexarg entered into a loan agreement with Mobilization for up to $361,155; the loan was secured by contract assignments, among other collateral. *Id.* at ¶¶ 19, 21; *see* ECF No. 1-5 at 3. On January 31, 2018, Jordan entered into a Joint Check Agreement ("JCA") with Mexarg and Mobilization, which allows Jordan to write checks jointly to both Mexarg and Mobilization. ECF No. 1 at ¶ 21; *see* ECF No. 1-7. JCAs are commonly used in the construction industry. ECF No. 1 at ¶ 20. Essentially, instead of Jordan writing a check to Mexarg who would then write a separate check to Mobilization to repay the loan, the JCA allows Jordan to write checks to both companies for Mexarg's subcontract work that Mobilization would be able to cash directly. *See id.* at ¶¶ 46–48. During the time that Mobilization entered the Loan Agreement with Mexarg and the JCA with Mexarg and Jordan, it did not know and was never informed of the issues Mexarg had with its nonpayment of its subcontractors. *Id.* at ¶ 22.

On February 1, 2018, Jordan told Mexarg and Mobilization that it had approved Payment Application No. 6 and that it would issue a joint check pursuant to the JCA. *See id.* at ¶ 25. On February 2, 2018, Mobilization released $140,000 of the loan to Mexarg, which Mexarg used to pay its subcontractors. *Id.* at ¶¶ 30–31. On February 8, 2018, Jordan discovered that Mexarg had sent bounced checks to its subcontractors and did not inform Mobilization. *Id.* at ¶ 32. As such, Jordan refused to issue a joint check despite approved Payment Application No. 6. *Id.* at ¶ 33. That same day, Barthelemy approved a payment plan to satisfy the bounced checks to Mexarg's subcontractors, for which Mobilization provided an additional $46,000 to Mexarg in exchange for an assignment of Mexarg's Payment Application No. 7. *Id.* at ¶¶ 34–37.

2

On February 23, 2018, Jordan terminated the Subcontract Agreement with Mexarg, arguing that Mexarg had breached the contract. *Id.* at ¶ 38. Mexarg argues that its inability to complete the work was due to Jordan's mismanagement. *Id.* Jordan has not written any joint checks to Mobilization or Mexarg. *Id.* at ¶ 39.

On June 11, 2018, Mobilization sued Jordan for what it claims are outstanding payments under various legal theories, including conversion (Count I), unjust enrichment (Count II), equitable estoppel (Count III), and actual and constructive fraud (Count IV and Count V, respectively). *Id.* at ¶¶ 58–106. Mobilization seeks to recover the $186,000 it loaned to Mexarg, punitive damages, attorneys' fees, and prejudgment and post-judgment interest. *Id.* at 16–17.

Jordan filed three motions to dismiss on June 27, 2018. *See* ECF Nos. 6–11. Mobilization filed three responses on July 11, 2018. *See* ECF Nos. 14–16. Jordan replied on July 17, 2018. *See* ECF Nos. 18–20. On September 10, 2018, the Court ordered Jordan to refile a single motion because the multiple motions violated the Local Rules. ECF No. 21. On September 12, 2018, Jordan filed its single Motion to Dismiss at issue here. *See* ECF Nos. 22–23. Jordan seeks to dismiss the action under Federal Rule of Civil Procedure 12(b)(1), 12(b)(6), and 12(b)(7). *Id.* Mobilization opposed the motion on September 26, 2018. ECF No. 25. Jordan replied on October 1, 2018. ECF No. 26.

## II. LEGAL STANDARD

### A. Lack of Subject Matter Jurisdiction under Rule 12(b)(1)

*1. Generally*

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of an action if the Court lacks subject matter jurisdiction. Unless a matter involves an area over which federal courts have exclusive jurisdiction, *see* 28 U.S.C. §§ 1333–34, a plaintiff may bring suit in federal court only if

3

the matter involves a federal question arising "under the Constitution, laws or treaties of the United States," § 1331, or if "the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of different States." § 1332(a)(1).

The court assumes that all factual allegations in the complaint are true if it is contended that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based. *Adams*, 697 F.2d at 1219. However, if the factual basis for jurisdiction is challenged, the plaintiff has the burden of proving subject matter jurisdiction. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). The plaintiff bears the burden of proving that subject matter jurisdiction exists by a preponderance of the evidence. *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347–48 (4th Cir. 2009). To determine whether subject matter jurisdiction exists, the reviewing court "may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004) (citing *Adams*, 697 F.2d at 1219). A party moving for dismissal for lack of subject matter jurisdiction should prevail only if material jurisdictional facts are not in dispute and the moving party is entitled to prevail as matter of law. *Richmond, Fredericksburg & Potomac R.R. Co.*, 945 F.2d at 768. If a court lacks subject matter jurisdiction, it must dismiss the action. Fed. R. Civ. P. 12(h)(3).

*2. Ripeness*

Ripeness is a justiciability doctrine that requires federal courts to withhold considering any actions that are based "upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985)). In determining whether a case is ripe or not, the Court must "'balance the fitness of the issues for judicial decision with the hardship to

the parties of withholding court consideration.'" *Miller v. Brown*, 462 F.3d 312, 319 (4th Cir. 2006) (quoting *Franks v. Ross*, 313 F.3d 184, 194 (4th Cir. 2002)). An action is deemed fit "when the issues are purely legal and when the action in controversy is final and not dependent on future uncertainties." *Id.* (citing *Charter Fed. Sav. Bank v. Office of Thrift Supervision*, 976 F.2d 203, 208 (4th Cir. 1992)). Hardship is determined by comparing "'the immediacy of the threat and the burden'" on the party bringing suit. *Id.* (quoting *Charter Fed. Sav. Bank v. Office of Thrift Supervision*, 976 F.2d 203, 208–09 (4th Cir. 1992)).

## B. Failure to State a Claim under Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of actions that fail to state a claim upon which relief can be granted. The United States Supreme Court has stated that in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Specifically, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Moreover, at the motion to dismiss stage, the court is bound to accept all of the factual allegations in the complaint as true. *Id.* However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Assessing the claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

In considering a Rule 12(b)(6) motion to dismiss, the Court cannot consider "matters outside the pleadings" without converting the motion to a summary judgment. Fed. R. Civ. P. 12(d). Nonetheless, the Court may still "consider documents attached to the complaint, . . . as well

5

as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007); *see also* Fed. R. Civ. P. 10(c); *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) ("When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein.").

### C. Failure to Join an Indispensable Party under Rule 12(b)(7)

Federal Rule of Civil Procedure 12(b)(7) states that an action should be dismissed if a necessary party cannot be joined under Rule 19. In considering a Rule 12(b)(7) motion to dismiss for failure to join a party pursuant to Rule 19, courts are required to make a two-part inquiry. First, courts must determine whether the party is necessary to the proceeding because of its relationship to the matter under consideration within the meaning of Rule 19. *Teamsters Local Union No. 171 v. Keal Driveway Co.*, 173 F.3d 915, 917 (4th Cir. 1999). Rule 19(a) states that someone is a required party if "the court cannot accord complete relief among existing parties" without that person or if that person "claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may" hurt their "ability to protect their interest" or "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."

Second, if the party would destroy jurisdiction, a court must determine if the action can continue in that party's absence. *Teamsters Local Union No. 171*, 173 F.3d at 917–18. "If it cannot, the party is indispensable and the action should be dispensed." *Id.* at 918. Under Rule 19(b), if the necessary party cannot be joined to the suit, then "the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be

6

dismissed." Generally, "[c]ourts are loath to dismiss cases based on nonjoinder of a party, so dismissal will be ordered only when the resulting defect cannot be remedied and prejudice or inefficiency will certainly result." *Owens-Ill., Inc. v. Meade*, 186 F.3d 435, 441 (4th Cir. 1999).

A court considers various factors in making this determination, including (1) whether a judgment without the necessary party "would prejudice that person or the existing parties"; (2) if any such prejudice could be lessened based on how the judgment was rendered; (3) whether a judgment without the necessary party would be adequate; and (4) whether the plaintiff "would have an adequate remedy if the action were dismissed." Fed. R. Civ. P. 19(b). This analysis under Rule 19 at both steps is not a "procedural formula," but rather a decision that "'must be made pragmatically, in the context of the substance of each case.'" *Home Buyers Warranty Corp. v. Hanna*, 750 F.3d 427, 433 (4th Cir. 2014) (quoting *Provident Tadesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 119 n.16 (1968)).

Finally, in determining where a potential necessary party should be aligned, courts do not rely on the parties' own determinations. *Jackson v. Home Depot U.S.A., Inc.*, 880 F.3d 165, 172 (4th Cir. 2018). Instead, courts must "look beyond the pleadings and arrange the parties according to their sides in the dispute." *Id.* (citation omitted). Courts must "determine the primary issue in controversy and then align the parties according to their positions with respect to that issue." *Id.* (quoting *U.S. Fidelity & Guar. Co. v. A&S Mfg. Co., Inc.*, 48 F.3d 131, 133 (4th Cir. 1995)). This is called the "principal purpose" test. *Id.*

### III. DISCUSSION

**A. Subject Matter Jurisdiction under Rule 12(b)(1)**

*1. Has Mobilization Adequately Pled Diversity Jurisdiction?*

Jordan initially argued that Mobilization failed to allege the citizenship of its members and therefore it did not adequately plead diversity jurisdiction. ECF No. 23 at 3–4. Mobilization

attached an affidavit to its response to Jordan's Motion. ECF No. 25-2 at 1. Jordan agrees that this is sufficient and concedes the point. ECF No. 26 at 4 n.5. Because the Court may consider evidence outside the pleadings, the Court finds that Mobilization has adequately pled diversity jurisdiction between the two parties. *Velasco*, 370 F.3d at 398.

*2. Is the Action Ripe for Judicial Determination?*

Jordan argues that Mobilization's action against it is not ripe because "it is unknown whether Mexarg will satisfy the loan to Mobilization; whether Mexarg has assets to satisfy the loan; whether Mexarg has provided sufficient collateral to Mobilization to satisfy the loan; or whether the two guarantors of the loan are able to satisfy the loan." ECF No. 23 at 10. However, Jordan misunderstands the purpose of ripeness. This doctrine is concerned with whether the claims before the Court are clearly presented and able to be decided at the time of suit. *See Miller*, 462 F.3d at 319. Mobilization's action is purely based on Jordan's prior actions and does not rely on any hypothetical future actions. If Mexarg were to pay off the loan tomorrow, Mobilization would likely dismiss the suit, and that would be the end of it. There is no concern that Mobilization's action is "dependent on future uncertainties." *Id.* Therefore, the Court finds that the action is ripe for judicial determination.

**B. Failure to State a Claim under Rule 12(b)(6)**

Jordan raising four different bases under Rule 12(b)(6); two that apply to the entire suit and two that are for specific claims. First, Jordan argues that all of Mobilization's claim fail because the suit is based purely on contracts, and a plaintiff cannot recover contractual claims under tort-based causes of action pursuant to the economic loss rule in Virginia. ECF No. 23 at 12–18. Second, Jordan argues that the JCA prevents Mobilization from recovering the loan amount from Mobilization. *Id.* at 21–22. Third, Jordan states that Mobilization's conversion

8

claim fails because "money generally cannot be converted." *Id.* at 18. Finally, Jordan argues that the unjust enrichment claim fails because Mobilization has not sufficiently alleged that Jordan has received a cognizable benefit. *Id.* at 19–20. The Court will take each of these arguments in turn.

   1. *Does the Economic Loss Rule Prevent Recovery?*

      a. <u>The Economic Loss Rule</u>

Under the economic loss rule in Virginia, parties that sue for purely economic losses under contract may only recover under the requisite contract because "losses suffered as a result of the breach of a duty assumed only by agreement, rather than a duty imposed by law, remain the sole province of the law of contracts." *Filak v. George*, 267 Va. 612, 618 (2004). Tort law does not "compensate parties for losses suffered as a result of a breach of duties assumed only by agreement. That type of compensation necessitates an analysis of the damages which were within the contemplation of the parties when framing their agreement. It remains the particular province of the law of contracts." *Sensenbrenner v. Rust, Orling & Neale, Architects, Inc.*, 236 Va. 419, 425 (1988) (citing *Kamlar Corp. v. Haley*, 224 Va. 699, 706 (1983)).

Mobilization attempts to narrow the scope of the economic loss rule and argues that the economic loss rule does not apply if a plaintiff can make out a legitimate tort claim in addition to a breach of contract claim. ECF No. 25 at 5–6. In Mobilization's view, if a plaintiff can sufficiently allege a constructive fraud claim based on facts that are distinct from a breach of contract claim, the economic loss rule does not prevent the party from pursuing the former. *See City of Richmond v. Madison Mgmt. Grp., Inc.*, 918 F.2d 438, 446–47 (4th Cir. 1990); *cf. Abi-Najm v. Concord Condo., L.L.C.*, 280 Va. 350, 361 (2010) (holding that plaintiffs could pursue a fraud and a breach of contract claim because the fraud action stemmed from facts before the

9

contract was in place). Mobilization also notes that Virginia, like many other courts, allows plaintiffs to bring tort and contract claims in the same suit if they "arise out of the same transaction or occurrence." Va. Code Ann. § 8.01-272.

Jordan argues that the Supreme Court of Virginia has definitively rejected this argument in *Filak v. George*, 267 Va. 612 (2004). In *Filak*, the plaintiffs sued their insurance agent for breach of contract and constructive fraud because she had orally promised them that their insurance policy would cover up to $481,000 when in fact their policy only covered up to $290,000. *See id.* at 614–16. The Supreme Court of Virginia held that the plaintiffs could not pursue their constructive fraud claim because they "merely sought recovery for losses allegedly suffered as a result of [the agent's] failure to fulfill her oral contract to procure a policy that would pay the total replacement costs of the plaintiffs' home within a few days after sustaining a total loss." *Id.* at 618.

The parties' arguments are ships in the night. Mobilization is correct that it may bring whatever tort-based cause of action without violating the economic loss rule *provided that* the tort actions have an independent basis and are not contract claims in tort claims' clothing. *Madison Mgmt. Grp.*, 918 F.2d at 446; *cf. Sensenbrenner*, 236 Va. at 425. Jordan is also correct that a constructive fraud claim cannot be used to disguise a breach of contract claim. *Filak*, 267 Va. at 618. Both of these propositions coexist without infringing on each other. The Virginia jurisdictional statute at least contemplates as much. *See* Va. Code Ann. § 8.01-272. Although this statute is merely jurisdictional and does not answer the legal question of how the economic loss rule applies, it at least demonstrates that there are instances where tort and contract actions may be pursued jointly.

In order to determine if the economic loss rule prevents Mobilization from pursuing its tort-based claims, the Court must determine two things: (1) Is the JCA a contract; and if so, (2) Are Mobilization's tort claims independent claims or rather artful pleadings of a run-of-the-mill breach of contract claim.

b. Is the JCA a Contract?

Mobilization alleges that the JCA is an equitable assignment. ECF No. 1 at ¶ 45. An equitable assignment exists when there is a "'transfer of the fund or some definite portion of it, so that the person owing the debt or holding the fund on which the order is drawn can safely pay the order, and is compellable to do so, though forbidden by the drawer.'" *Edmunds v. CBC Enters., Inc.*, 261 Va. 432, 436 (2001) (quoting *Hicks v. Roanoke Brick Co.*, 94 Va. 741, 745–46 (1897)). Due to its equitable nature, such assignments do not require any particular wording or acts, but rather "the intention of the assignor is the controlling consideration . . . [which] must be manifested by some word, written or oral, or by some act inconsistent with the assignor's remaining as owner." *Id.* (quoting *Nusbaum & Co. v. Atl. Realty*, 206 Va. 673, 681 (1966)). In other words, "if the assignor retains any control whatsoever over the fund or property to be assigned, then an assignment has not been effected." *Id.* at 437. Documents that provide for joint checks have been held to constitute equitable assignments. *Va. Machinery & Well Co. v. Hungerford Coal Co.*, 182 Va. 550, 557 (1944). However, sufficient evidence must be presented to make such a finding. *Edmunds*, 261 Va. at 438.

Construing all facts in the light most favorable to Mobilization, the Court finds that Mobilization has sufficiently pled facts to allege that the JCA is an equitable assignment. Mobilization alleges that the JCA requires Jordan to pay Mobilization "when payment became due as set forth by the Subcontract Agreement." ECF No. 1 at ¶ 49. The Subcontract

Agreement, in turn, requires Mexarg to submit payment applications to Jordan, and only after Jordan approved these applications, would Mexarg be paid. *Id.* at ¶¶ 51–53. Under these allegations, Mobilization has sufficiently alleged that the JCA is an equitable assignment from Mexarg to Mobilization for any payments from Jordan.[1] Mobilization even has affidavits from Mexarg that state the same.[2] ECF No. 25-1 at 1.

However, even if Mobilization is correct that the JCA is an equitable assignment, the document must still be considered a contract. Virginia law requires that any agreement "to charge any person upon a promise to answer for the debt, default, or misdoings of another" or "to lend money or extend credit in aggregate amount of $25,000 or more" must be in writing. Va. Code Ann. § 11-2(4), (9). The JCA contemplates Jordan writing a check to both Mexarg and Mobilization because Mexarg has assigned its rights of payment in order to receive up to $361,155. *See* ECF No. 1 at ¶ 19. The JCA charges Jordan to answer for Mexarg's debt from the Loan Agreement between Mexarg and Mobilization. *See id.* Therefore, regardless of whether or not the JCA is an equitable assignment, it still must be considered a contract.

Moreover, Mobilization argues against itself. When arguing about its unjust enrichment claim, Mobilization states that Jordan has a received a benefit from the JCA in the form of "the 'efficient administration of the General Contract.'" ECF No. 25 at 14 (quoting ECF No. 1-2 at 3). This is sufficient consideration for the benefit Mobilization received in the form of the security of payment through joint checks. *See Richmond Eng'g & Mfg. Corp. v. Loth*, 115 S.E. 774, 787 (Va. 1923) ("[W]hether the consideration was commensurate with the promise is

---

[1] Mobilization alleges at one point that "[Jordan] assigned Mexarg's right to payment under the Subcontract Agreement to Mobilization" through the JCA. ECF No. 1 at ¶ 59. This makes no sense as a party of a contract cannot assign the rights of the other party without at least that right-holder's acceptance; only the party with the right can assign that right. *See Allstate Ins. Co. v. Am. Bankers Ins. Co of Fla.*, 882 F.2d 856, 859–60 (4th Cir. 1989); *cf. Edmunds*, 261 Va. at 436. In order to be a valid assignment, Mexarg must be the assignor, not Jordan.

[2] The Court notes this purely as supplemental and does not explicitly consider evidence outside the pleadings as it declines to convert the current motion to dismiss into a motion for summary judgment. *See* Fed. R. Civ. P. 12(d).

immaterial. If the consideration has any value whatever, it is, in such case, sufficient to support the promise and render it enforceable."); *see also* Restatement (Second) of Contracts §§ 71, 79 (Am. Law Inst. 1981).

Mobilization tries to get around this issue by arguing that the JCA created a constructive trust for the joint checks. ECF No. 25 at 8–9. In support of this contention, Mobilization cites to a bankruptcy case where the parties did not dispute that the contractor owed money to the now bankrupt subcontractor. *See Mid-Atl. Supply, Inc. v. Three Rivers Aluminum Co.*, 790 F.2d 1121, 1122–24, 1126–27 (4th Cir. 1986). Beyond just the unrelated factual basis, the case is also inapposite for the simple reason that this particular equitable assignment must be contractual in order to be actionable under Virginia law. *See* Va. Code Ann. § 11-2. Mobilization's idea that the JCA created a constructive trust appears to be nothing more than artful twisting of the laws of equity to avoid bringing what should be a contract claim. There cannot be a constructive trust where there is already a contractual foundation. Therefore, the Court finds that the JCA must be a contract, regardless of whether it is considered an equitable assignment or not.

c. <u>Are Mobilization's Tort Claims Just Breach of Contract Claims?</u>

Mobilization brings several claims under tort law including: conversion, unjust enrichment, equitable estoppel, actual fraud, and constructive fraud. ECF No. 1 at 9–16. Because the JCA is a contract, Mobilization cannot bring a tort-based claim under this agreement, although it may bring tort actions that arise from the same occurrence but outside the terms of the contract. Va. Code Ann. § 8.01-272; *Madison Mgmt. Grp.*, 918 F.2d at 446; *Filak*, 267 Va. at 618.

As an initial matter, Mobilization argues that its tort actions are its only form of relief because the JCA specifically disavows Mobilization of any contractual rights against Jordan.

13

ECF No. 1-6 at 2. This makes sense because it was Mexarg who assigned its rights to Mobilization, not Jordan. As the JCA itself acknowledges, Jordan's obligations are to Mexarg pursuant to the Subcontract Agreement. *Id.* As the party who writes the joint checks, Jordan does not have any contractual obligations to Mobilization, only Mexarg as the assignor does.[3]

Mobilization's Count I of conversion automatically fails. This claim is solely based on the theory that the JCA created a constructive trust in the two payments Jordan had approved, and therefore Jordan converted money to which Mobilization is entitled under the JCA and the Subcontract Agreement. ECF No. 1 at ¶¶ 58–68. As noted above, the JCA is an equitable assignment under contract, not a constructive trust. Therefore, Jordan cannot be held liable for conversion of the corpus of an alleged constructive trust.

Count II, Mobilization's unjust enrichment claim, fails as well. Mobilization seeks to recover the amount they are owed under the JCA and the Subcontract Agreement arguing that Jordan unjustly received a benefit of the "efficient administration of the General Contract." *Id.* at ¶¶ 69–75. The JCA is a contract, and the unjust enrichment claim here is basically the same as a normal breach of contract claim. Mobilization points out that the JCA specifically states that it has no contractual rights. ECF No. 1-6 at 2. But Mobilization chose to bargain away its rights. It cannot claim it is entitled to a tort-based claim because it chose to sign away its contractual rights. Relying on this language of the contract cannot circumvent the economic loss rule. Furthermore, Mobilization could recover its losses through the Loan Agreement it has with Mexarg, so it still has some method of recovery.

Mobilizations' claim of equitable estoppel, Count III, is not a cognizable cause of action but an affirmative defense. *See Parker v. Westat, Inc.*, 301 F. Supp. 2d 537, 544 (E.D. Va.

---

[3] The conversion claim is so circuitous for this very reason: Mobilization would likely have a claim against Mexarg, but instead has sued Jordan. This is why Mexarg is a key player in this litigation. *See infra* at III.C.

14

2004); *see, e.g., Luddeke v. Amana Refrigeration, Inc.*, 239 Va. 502, 503, 505 (1990) (plaintiff raising equitable estoppel as a defense to defendant's argument that his breach of warranties claim was barred by a statute of limitations). As such, the Court need not consider this count any further.

In Counts IV and V, Mobilization pleads two counts of fraud, actual fraud and constructive fraud. Like the unjust enrichment claim, these two counts are not based on the JCA itself, but rather Jordan's omissions *prior* to the JCA. Mobilization's fraud claims are focused on Jordan's failure to inform Mobilization of Mexarg's nonpayment of its subcontractors. Therefore, the economic loss rule is again rendered inapplicable to these two counts.

The Court therefore finds that the economic loss rule precludes Counts I and II, Count III is not a cognizable claim, and Counts IV and V are not barred by the economic loss rule.

*2. Does the JCA Prevent Recovery?*

Jordan's next argument is that the Court should dismiss all of Mobilization's claims because the JCA "does not require [Jordan] to pay any funds directly to Mobilization." ECF No. 23 at 21–22. While courts interpret unambiguous contract terms by their plain meaning, *TravCo Ins. Co. v. Ward*, 284 Va. 547, 552 (2012) (quoting *Barber v. VistaRMS, Inc.*, 272 Va. 319, 329 (2006)), "[t]he guiding light in the construction of a contract is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that the parties intended what the written instrument plainly declares." *Schuiling v. Harris*, 286 Va. 187, 192–93 (2013) (quoting *Wilson v. Holyfield*, 227 Va. 184, 187 (1984)). The JCA here clearly states that Jordan should write joint checks to Mexarg and Mobilization. Jordan argues that Mobilization is trying to change the terms the JCA by asking Jordan to pay Mobilization directly. ECF No. 23 at 22. However, this argument does not account for the intent of the JCA, which is

for Mobilization to secure its ability to recover the money it had loaned to Mexarg. Therefore, Jordan's argument fails.[4]

Moreover, Jordan attempts to change Mobilization's claims to claims for specific performanc when it claims that Mobilization is only entitled to joint checks. ECF No. 23 at 18. Mobilization seeks damages, not specific performance, and Jordan does not get to dictate what relief Mobilization may request.

*3. Does Mobilization Fail to State a Conversion Claim?*

Jordan also argues that Count I fails under Virginia law because money cannot be subject of a conversion action. ECF No. 23 at 18. However, this argument is erroneous, as Virginia law does allow conversion claims "in cases where intangible property rights arise from or are merged with a document, such as a valid stock certificate, promissory note, or bond." *United Leasing Corp. v. Thrift Ins. Corp.*, 247 Va. 299, 305 (1994) (citing *Triple-A Baseball Club Assocs. V. Ne. Baseball, Inc.*, 655 F. Supp. 513, 538–39 (D. Me. 1987)). Therefore, the Court rejects this argument.[5]

*4. Does Mobilization Fail to State an Unjust Enrichment Claim?*

To establish a claim of unjust enrichment, a plaintiff must allege "(1) it conferred a benefit to [the defendant]; (2) [the defendant] knew of the benefit and should reasonably have expected to repay [the plaintiff]; and (3) [the defendant] accepted or retained the benefit without paying for its value." *Collelo v. Geographic Servs., Inc.*, 283 Va. 56, 83 (2012). Jordan argues that Count II fails under Virginia law because Mobilization has insufficiently pled that Jordan

---

[4] The Court also questions if this argument is proper under Rule 12(b)(6), as this appears to be more of an affirmative defense than a reason why Mobilization's Complaint fails to state a claim. However, because the Court finds that the argument is unavailing either way, the Court does not specifically delve into this topic.

[5] To the extent Jordan is arguing here that Virginia law does not allow a conversion claim when there is a valid contract, the Court has already dealt with this argument, and will not rehash its views. *See supra* III.B.1.

16

received a benefit from Mobilization. ECF No. 23 at 19–20. Mobilization alleges the benefit to Jordan was the "efficient administration of the General Contract." ECF No. 1 at ¶¶ 69–75. Jordan says that "this is a meaningless statement" and that really it was Mexarg that received the benefit, not Jordan. ECF No. 23 at 19.

However, just because Mexarg received a benefit does not mean that Jordan itself did not benefit as well. Mobilization alleges that the General Contract has specific date benchmarks that the buildings must be completed and that there is a liquidated damages clause if Jordan fails to meet those deadlines. ECF No. 1 at ¶¶ 6–7. Mobilization further alleges that Jordan would receive bonuses if the work was completed ahead of schedule. *Id.* at ¶ 8. Based on these allegations, the Court finds that Mobilization has sufficiently alleged Jordan has received a benefit. Through the Loan Agreement between Mexarg and Mobilization and the JCA between the three, Jordan received the benefit of trying to ensure the work on the apartment building was done either on time or ahead of schedule. Construing the facts in the light most favorable to Mobilization, the Court finds that it has sufficiently alleged a benefit.[6]

## C. Failure to Join an Indispensable Party under Rule 12(b)(7)

The core argument between the parties focuses on the status of Mexarg in relation to this lawsuit. Jordan argues that Mexarg is a necessary and indispensable party. ECF No. 23 at 4–8, 12. Moreover, Jordan argues that Mexarg must be joined as a plaintiff, which would destroy diversity jurisdiction. *Id.* As such, the suit must be dismissed.

Mobilization, on the other hand, argues that Mexarg is not an indispensable party or even necessary because the dispute it has with Jordan is only under the JCA and does not all affect any dispute between Jordan and Mexarg. ECF No. 25 at 16–21. Moreover, Mobilization argues that

---

[6] To the extent Jordan argues here that an unjust enrichment claim is barred when there is a valid contract, the Court has already addressed this issue, and will not reiterate its findings. *See supra* III.B.1.

17

even if Mexarg is necessary, it should be considered a defendant in the case, which would not destroy diversity. *Id.* at 21. Mobilization's core argument is that because the JCA is an equitable assignment, Mexarg no longer has an interest in the joint checks. *Id.* Mobilization argues that the reason why Mexarg appears to be necessary is because Jordan keeps raising its own concerns of liability to Mexarg in its defenses. *Id.* at 17–18.

However, Mobilization forgets that the JCA is tied to the Subcontract Agreement; specifically, the JCA states that the joint checks are to be issued under the terms of payment in the Subcontract Agreement. ECF No. 1 at ¶¶ 47–52. Mobilization alleges that this issue, for the purposes of this action, is resolved because Jordan approved the Payment Applications related to the two joint checks. *Id.* at ¶¶ 25, 34–37. Mobilization also points to an affidavit from Mexarg stating that it has no interest in the joint checks. ECF No. 25-1 at 1.

While Mexarg may not have an interest in the specific joint checks, it does have an interest in whether or not Jordan is liable to pay based on the payment applications; specifically, if the Court were to find Jordan liable to Mobilization for the joint checks, it must first find that Jordan is liable to Mexarg for the amount owed in the payment applications. ECF No. 23 at 5; *see* ECF No. 1 at ¶¶ 47–52. If the payment applications require Jordan to issue the joint checks, then Jordan is also on the hook for any amount Mexarg is owed under those applications. Mexarg has apparently already issued demand letters and recorded a mechanic's lien against Jordan, so it is clear that Mexarg has at least some interest in pursuing a claim at least partially based on these payment applications. ECF No. 23 at 7.

Mobilization therefore ignores the possibility that this suit "leave[s] [Jordan] subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(B)(ii). It would be odd, for example, for the Court to find that

Jordan did not owe Mobilization for the joint checks, and then if Mexarg sues Jordan separately for this Court or another court to find that Jordan owes Mexarg. The only way Jordan owes either of these companies is if the payment applications require Jordan to pay them. Given that the Subcontract Agreement between Jordan and Mexarg is such a core part of this action, the Court finds that Mexarg is a necessary party under Rule 19(a).

Since Mexarg is a Virginia corporation, if it were joined as a plaintiff, diversity jurisdiction would indeed be destroyed. *See* 28 U.S.C. § 1332(a)(1). However, the parties dispute whether Mexarg should be joined as a plaintiff or a defendant, and for good reason. On one hand, Mexarg may have claims against Jordan because it is possibly owed money under the Subcontract Agreement. On the other, Mobilization may have a claim against Mexarg under the Loan Agreement.

Under the "principal purpose" test, the Court finds that Mexarg is best suited as a defendant in this action. The primary issue of this case is that Mobilization has not received any of its money it loaned to Mexarg, and Mobilization seeks to recover it. Therefore, Mobilization would sue Jordan under the JCA and Mexarg under the Loan Agreement. Mexarg may be liable to Mobilization under the Loan Agreement. Then if it wishes, Mexarg may crossclaim Jordan with respect to any breach of the Subcontract Agreement. Not only does this alignment accurately reflect everyone's perspectives on the primary issue, but it also avoids the undesirable outcome of dismissing a case for lack of jurisdiction simply because there is an indispensable party. *See* Fed. R. Civ. P. 19(b).

Therefore, the Court finds that Mexarg is a necessary party but is not indispensable and the action need not be dismissed under Rule 12(b)(7).

## IV. CONCLUSION

Based on the foregoing reasons, Jordan's Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**. The Motion is granted in that Counts I, II, and III are dismissed under Rule 12(b)(6). The Motion is denied in that the action is not barred by Rule 12(b)(1). The Motion is further denied in that Counts IV and V are not barred under Rule 12(b)(6). The Motion is also denied in that the case is not barred by Rule 12(b)(7). The Court further **ORDERS** that Mexarg be joined as a defendant pursuant to Federal Rule of Civil Procedure 19(a)(2). The Court further **ALLOWS** Mobilization to amend its Complaint under Federal Rule of Civil Procedure 15(a)(2) to the extent that it must do so to adequately plead any and all claims against Mexarg within fifteen (15) days from the date of this Order. The Court **DIRECTS** the Clerk to provide a copy of this Order to the parties.

**IT IS SO ORDERED.**

/s/
Raymond A. Jackson
United States District Judge

Newport News, Virginia
November 27, 2018